## Case No. 12,682.

SEWALL v. HULL OF A NEW SHIP.

[1 Ware, 565.] [1]

District Court, D. Maine. Sept. Term, 1855.

MARITIME LIENS—UNDER STATE STATUTE—MATERIALS—APPROPRIATION.

To entitle a person to a lien on a vessel, under Rev. St. Me. c. 125, § 35, there must be an appropriation, express or implied, of the labor or materials at the time of the contract, or if not, at least at the time of the execution of the contract by the delivery of the materials, to the particular vessel against which the lien is claimed.

[Cited in The Young Sam. Case No. 18,186; The James H. Prentice, 36 Fed. 781.]

[Cited in Rogers v. Currier, 13 Gray, 134; Barstow v. Robinson, 2 Allen, 606.]

This was a libel by a material man for the price of materials furnished for, and used in the construction of a new ship.

Mr. Merrill, for libellant.
Mr. Shepley, for claimant.

WARE, District Judge. The materials were furnished in this case, as is alleged in the libel, as well on the credit of the ship as on the personal credit of the builders, Harriman & Co., to the amount of $1,112.49, according to a schedule annexed. The account being unpaid, and the builders, before the completion of the ship having stopped payment, she was arrested, and the libel having been filed within four days after she was launched, the libellant claims a lien on her under the Revised Statutes of Maine. The answer of Franklin Clarke, claiming to be the sole owner under a mortgage now foreclosed, denies that the materials were furnished on the credit of the ship, but alleges that they were sold in the ordinary course of trade on the personal credit of the builders only; that as to the larger part of the

claim, it was settled and paid by Harriman & Co., on the 12th of January, by their negotiable note for the amount then due. There are other exceptions to the residue of the claim; but before coming to them, it is necessary to dispose of an objection that goes to the whole claim set up in the libel. It is denied that the materials were furnished on the credit of the vessel, or that any lien upon it for security was contemplated by the parties, but that they were purchased in the usual course of trade on the personal credit of the builders, without any reference to the use to which they might be applied; and therefore, though actually used in the construction of the ship, that the vendor has no more claim to a lien upon it than the vendor of any other merchandise, sold in the common course of trade, has for materials which may happen to be used in the building of a vessel.

The facts not controverted are, that when the contract was made for the lumber it was known to the libellant that Harriman & Co. were engaged in building this vessel; that the lumber was such as is ordinarily used in vessels, and that he had good reason for believing that it was intended to be used in this vessel. But there is no proof that any thing was said on the subject by either party. In what form the charges were entered on the books of the vendor, whether against the ship, or the builders personally, or against both, does not appear. Though notified to produce his books the libellant has not done so, and the reasonable inference is, that if produced they would furnish no evidence that the vendor originally looked to the vessel as security. There is, then, no evidence that the articles named in the bill of particulars were obtained by the purchasers in any other way than in the ordinary course of trade, or that the libellant bargained for, or contemplated any other security for payment, than in any other case of trade; that is, the personal liability of the purchasers; and here it should be observed that they were at this time in undoubted credit. But it is conceded that the materials were actually used in building the vessel.

On these facts the question is raised whether the statute gives the lien. If it does, the mere transfer will not defeat it. It is as valid in the hands of the assignee as in those of the original owner. And this question depends on the true construction of the statute. The material and operative words of the law are: "Any ship-carpenter, caulker, blacksmith, joiner, or other person, who shall perform labor or furnish materials for or on account of any vessel, building or standing on the stocks, or under repairs after being launched, shall have a lien on such vessels for his wages or materials, until four days after such vessel is launched, or such repairs afterwards completed." Rev. St. c. 125, § 35. The lien is given in the most

comprehensive and liberal terms. Every person may stipulate for the credit of the ship in addition to the personal liability of the builders; and further, where labor has been performed or materials furnished for or on account of a vessel, the law gives the creditor a lien without any express stipulation for that purpose. All that seems to be required is, that it should be understood between the parties that the labor or materials are engaged for that particular purpose, and the vessel becomes bound for the payment, by operation of law, provided proceedings are instituted to enforce the lien within four days after the vessel is launched or the repairs completed. But the words "for or on account of" naturally and necessarily imply that they are furnished for the use of a particular and known vessel, and that this is one of the express or understood terms of the contract. For it cannot be pretended that when a person has performed labor under a general contract for service, or has sold materials in the ordinary course of trade, to a merchant or ship-builder, without reference to any particular vessel that is being built or under repair, that he has a lien under this law against any vessel to which the labor or materials may happen to be appropriated. There must be a reference or appropriation, either express or implied, to the thing against which the lien is claimed. It was so held by this court in the case of The Calisto [Case No. 2,316], and the doctrine was affirmed in the same case on appeal. Read v. Hull of a New Brig [Id. 11,609]. In the present case, though it was known to the vendor that Harriman & Co. were building this vessel, it does not appear that any thing was said by either party in reference to it. Nor does it appear that the vendor charged the materials to the vessel, as he naturally would and should have done if he intended to rely on a lien, but the inference is that he did not. There is no proof that at any time before Harriman & Co. suspended payment the libellant ever looked to the ship as security. On the contrary, on the settlement, on the 12th of January, when a negotiable note was given for the amount then due, nothing was said by either party of a lien on the vessel; though a note intended to be negotiated was taken, which, by the law of this state, unexplained, amounted to payment and satisfaction of the account. Taking all the evidence together, it appears to me to have been a sale in the ordinary course of business, and that there was no such appropriation of the materials to any particular purpose, that they can properly be said, in the language of the law, to have been furnished for or on account of this ship, but that the vendor looked for payment only to the personal responsibility of the purchasers. This view of the evidence applies as well to the materials sold after the settlement on the 12th of January, as to those sold before.

On the whole, if the view I have of the law be correct, in order to maintain the lien, there must be an appropriation of the materials, express or implied, at the time of the contract, or if not then, at least at the time of the delivery of them and the execution of the contract, to the particular vessel against which the lien is claimed. As this is not shown to have been done in the present case, the libel must be dismissed with costs.